COBB, Judge.
The defendant, Truman Armstrong, seeks review of sentences he received which involve an analysis of three different cases.
In Case No. 87-7911, Armstrong pled guilty to possession of a firearm in the commission of a felony (Count I); aggravated assault (Count II); shooting at, within, or into a building (Count III); and *577 armed burglary (Count IV). As to Counts I, II, and III, Armstrong’s sentence was suspended and he was placed on five years’ probation. As to Count IV, he was sentenced to nine years’ incarceration to run concurrent with his five-year probation.
On October 4, 1991, in Case No. 91-10608, Armstrong was charged with burglary of a structure (Count I) and grand theft (Count II). On January 24, 1992, the Department of Corrections filed an affidavit indicating Armstrong had violated the probation to which he was sentenced in Case No. 87-7911. On February 21, 1992, Armstrong was charged with carrying a concealed firearm (Count I) and possession of a firearm by a convicted felon (Count II) in Case No. 92-14.
A plea hearing was held on March 11, 1992 for all three cases. Previously, on March 10, 1992, the state had filed a written notice of intent to habitualize Armstrong in Case No. 91-10608. At the plea hearing, Armstrong pled guilty in all three eases in exchange for the state’s promise to nolle prosse Count I of Case No. 92-14 and to recommend that, for all remaining counts in the three eases, Armstrong receive no more than a total sentence of twelve years’ incarceration as a habitual felony offender. This negotiated plea was based on the parties’ belief that Armstrong would fall in the recommended range of nine to twelve years pursuant to the guidelines. However, Armstrong further agreed that if his guidelines scoresheet showed a higher score than anticipated with a recommended sentence beyond the nine-to-twelve-year range, the state was free to seek a greater sentence.
On May 7, 1992, prior to sentencing but after the plea hearing, the state filed a written notice to habitualize Armstrong in Case No. 92-14. At the July 17, 1992 sentencing hearing, Armstrong scored higher than originally anticipated. Rather than the nine-to-twelve year range, his score-sheet indicated a recommended range of twelve to seventeen years’ incarceration.
The court then sentenced Armstrong as follows: In Case No. 87-7911, the trial court revoked probation and sentenced Armstrong to five years incarceration as to Counts I and II and fifteen years as to Count III. Despite the fact that Armstrong had never received probation as to Count IV, the trial court sentenced him to fifteen years on that count. In so doing, the court stated:
As to Count IV, armed burglary of a dwelling, 15 years in the Department of Corrections. I will give him credit for the 9 years and 138 days that he served on that particular case. Even though there was probationary sentences imposed as to Counts I, II, and III, I will give him credit for 9 years on this total case.
The written sentence in this case generally followed the above oral pronouncement except that, for some unexplained reason, the written version designates Armstrong as a habitual felony offender as to Counts I through III. The court made no such finding or adjudication at the sentencing hearing.
As to Case No. 91-10608 and Case No. 92-14, Armstrong was habitualized based on his conviction of four felonies in Case No. 87-7911 and one felony in a 1984 case. Due to this habitualization, Armstrong was sentenced to ten years on each count in Case 91-10608 and fifteen years as to Count II in Case No. 92-14, the state having dismissed Count I as agreed.
On appeal, Armstrong raises several sentencing errors. Regarding Case No. 87-7911, Armstrong first contends that the trial court erred in resentencing him on Count IV. We agree. Clearly, this sentence was an error because Armstrong had already been sentenced as to Count IV for a straight term of nine years with no probation ordered. His violation of probation was only on Counts I, II and III and his resentencing was limited to those counts.
Second and also pertaining to Case No. 87-7911, Armstrong maintains that the trial court erred in sentencing him as a habitual offender in Counts I through III. Again, he is correct. Where the state does not seek habitualization at the original sentencing, the court cannot, upon revocation *578 of probation, sentence a defendant as a habitual offender. Snead v. State, 616 So.2d 964 (Fla.1993). In Armstrong’s case, the state could not and did not seek habitu-alization when he was originally sentenced in Case No. 87-7911. Although not raised on appeal, we also note that the state failed to serve the required written notice of intent to habitualize in this case. See Section 775.084(3)(b), Florida Statutes (1991).
Regarding his sentence in Case No. 92-14, Armstrong contends that the trial court erred in sentencing him as a habitual offender because he did not receive the state’s notice of intent to habitualize until after he had entered his plea. In Ashley v. State, 614 So.2d 486 (Fla.1993), the Florida Supreme Court held that in order for a defendant to be habitualized following a guilty or nolo plea, the defendant must have been given written notice of intent to habitualize prior to acceptance of the plea. Here, the facts clearly demonstrate that the state did not serve its notice of intent until after Armstrong had entered his plea. Therefore, pursuant to Ashley, the court erred in sentencing Armstrong as a habitual offender in Case No. 92-14.
Accordingly, the sentences in Case No. 87-7911 and 92-14 are reversed and remanded with instructions that the sentence as to Count IV in Case No. 87-7911 be vacated and the written sentences for Counts I through III in Case No. 87-7911 and Case No. 92-14, be revised to conform to the sentencing guidelines.
REVERSED AND REMANDED.
DAUKSCH and PETERSON, JJ., concur.